IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-505-D

| | |
|---|---|
| FBA OPERATING CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ETN CAPITAL, LLC, d/b/a/ ) | |
| BEECH LANE, ) | |
| ) | |
| Defendant. ) | |

On September 13, 2023, FBA Operating Company ("FBA" or "plaintiff"), filed a complaint against ETN Capital, LLC, d/b/a Beech Lance ("ETN" or "defendant") alleging patent infringement [D.E. 1]. On September 27, 2023, FBA moved for a temporary restraining order ("TRO") [D.E. 8] and filed a memorandum, exhibits, and declaration in support [D.E. 9, 9-1, 9-2, 10]. On September 28, 2023, FBA served the motion on ETN's counsel [D.E. 13]. On September 30, 2023, ETN responded in opposition [D.E. 15] and filed two affidavits and numerous exhibits [D.E. 16, 17]. As explained below, the court denies FBA's motion for a TRO.

I.

On January 12, 2021, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 10,890,925 B2 ("925 Patent") to FBA. See Compl. [D.E. 1] ¶¶ 6, 8. The 925 Patent concerns a recreational vehicle leveling system. See id. at ¶ 6. By calculating and transmitting adjustment information, the system allows the end user to adjust the recreational vehicle's pitch and roll. See id. at ¶ 8. The 925 Patent contains 20 claims, three of which are independent. See id. at ¶ 9.

ETN's Beech Lane brand sells the Beech Lane Wireless RV Leveling System ("BLS"). See id. at ¶ 27. FBA alleges that the BLS competes with and practices at least one claim of the 925 Patent. See id. FBA also alleges that ETN obtained no license to practice the 925 Patent, and the continued development, testing, manufacture, promotion, and sale of the BLS infringes on the 925 Patent. See id. at ¶¶ 28–29. FBA asserts direct and indirect infringement of the 925 Patent. See id. at ¶¶ 30–43. FBA seeks a temporary restraining order and asks the court to enjoin ETN from "continuing infringement of the claims of [the 925 Patent]" and "continuing manufacture, importation, use, sale, and offers to sell the [BLS] or similar products . . . ." [D.E. 8] 1; Fed. R. Civ. P. 65(b).

## II.

The court has considered FBA's motion for a TRO under the governing standard. See, e.g., Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, 188 (4th Cir. 2013) (en banc); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam). A motion for a TRO follows the same standard applicable to a motion for a preliminary injunction. See U.S. Dep't of Lab. v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). FBA must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. See Winter, 555 U.S. at 20. A TRO "is an extraordinary remedy never awarded as of right." Id. at 24; see Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017); Shibumi Shade, Inc. v. Beach Shade LLC, No. 5:21-CV-256, 2022 WL 390839, at *3 (E.D.N.C. Feb. 8, 2022) (unpublished) appeal dismissed, No. 2023-1051, 2022 WL

17661183 (Fed. Cir. Dec. 14, 2022) (unpublished); Mitchell v. N.C. Div. of Emp. Sec., 76 F. Supp. 3d 620, 628 (E.D.N.C. 2014), aff'd, 599 F. App'x 517 (4th Cir. 2015) (per curiam) (unpublished).

As for likelihood of success on the merits of a patent infringement claim, a plaintiff "must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) [the plaintiff] will likely prove that [the defendant] infringes the [relevant] patent, and (2) [the plaintiff's] infringement claim will likely withstand [the defendant's] challenges to the validity and enforceability of the [relevant] patent." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001); see Murata Machinery USA v. Diafuku Co., 830 F.3d 1357, 1363 (Fed. Cir. 2016). ETN does not raise any validity or enforceability challenges. Rather, ETN argues that its product does not infringe the 925 Patent. See [D.E. 15] 16–24. Thus, the court considers whether FBA is likely to prove that ETN's BLS infringes the 925 Patent.

To analyze infringement, the court must determine: (1) "the meaning and scope of the patent claims asserted to be infringed," and (2) "the properly construed claims to the device accused of infringing." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); see Chamberlain Grp., Inc. v. Lear Corp., 516 F.3d 1331, 1340 (Fed. Cir. 2008). "[E]ach element of a claim is material and essential, and . . . to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538–39 (Fed. Cir. 1991).

First, the court must engage in "claim construction or interpretation." Markman, 52 F.3d at 976. The goal of claim construction is to determine the meaning of the claims. See id. at 980. The "claims of a patent define the invention to which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that

3

dispute." O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008).

For claim construction, the court must: (1) analyze "the text of the patent and its associated public record," (2) apply "the established rules of construction," and (3) "arrive at the true and consistent scope of the patent owner's rights to be given legal effect." Markman, 52 F.3d at 979. A claim's words "are generally given their ordinary and customary meaning." Phillips, 415 F.3d at 1312. "[O]rdinary and customary" means the standard "a person of ordinary skill in the art in question at the time of the invention" would apply. Id. at 1313. The claims "must be read in view of the specification, of which they are a part." Id. at 1315. "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id.; Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

A court also may consider the prosecution history. See Vitronics Corp., 90 F.3d at 1582. "The prosecution history ... consists of the complete record of the proceedings before the [PTO]," including "the prior art cited during the examination." Phillips, 415 F.3d at 1317. "Like the specification, the prosecution history provides evidence of how the [PTO] and the inventor understood the patent." Id. Prosecution history may serve to "exclude any interpretation that was disclaimed during prosecution." Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005). The court, however, cannot "rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." 3M Innovative Props. v. Tradegar Corp., 725 F.3d 1315, 1322 (Fed. Cir. 2013).

4

FBA alleges that ETN's BLS infringes on independent claims 1, 10, and 15 of the 925 Patent. See [D.E. 9] 7–8, 13–14; [D.E. 9-1]; [D.E. 10]. ETN responds that each independent claim of the 925 Patent requires "simultaneous display of two or more adjustment pairs," and ETN's BLS does not provide such a display. See [D.E. 15] 18–22.

Claims 1, 10, and 15 state that the display device is configured to "simultaneously display the height adjustment amount and corresponding adjustment direction of each adjustment pair adjacent to each section of the [vehicle]." [D.E. 1-1] 30–32. The three claims include the same elements of "simultaneous display" of the "height adjustment amount and corresponding adjustment direction" and "of each adjustment pair." Id. The disputed construction term is "of each adjustment pair." Compare [D.E. 9-1] 3–4 with [D.E. 15] 20–22. FBA argues that the multiple adjustment pairs are the adjustment amount and the adjustment direction, calling "the first of the required pairs, the height adjustment amount" and "the second adjustment pair, the adjustment direction." [D.E. 9-1] 3–4. ETN responds that "adjustment pair" describes both the height adjustment amount and the height adjustment direction for either the "roll" or "pitch" of the recreational vehicle. [D.E. 15] 20–22.

The ordinary meaning and grammar usage, the specification, and the prosecution history favor ETN. First, FBA's construction does not follow the plain meaning of the phrase "each adjustment pair." The applicable claims state: "the display device . . . is configured to . . . simultaneously display the height adjustment amount and corresponding adjustment direction of each adjustment pair." [D.E. 1] ¶ 10. "Of each adjustment pair" modifies the compound noun that precedes it, "the height adjustment amount and the corresponding adjustment direction." Id. The adjustment height cannot independently be the first adjustment pair, because "of each adjustment pair" modifies the compound noun, indicating that "each adjustment pair" refers to more

5

than one pair of both an adjustment amount and an adjustment direction. The natural reading based on both the specification and the prosecution history indicates that the pairs of adjustment indicators correspond to the pitch and the roll. Thus, the "adjustment pairs" are (1) the amount and direction of the pitch adjustment, and (2) the amount and direction of the roll adjustment. See id. at 8–9.[1]

The prosecution history also supports ETN. The 925 Patent claims were adjusted to avoid conflicts with prior art of the Thorpe Patent (U.S. Patent No. 10,086,954). See [D.E. 15] 22–23. If the court construed the claims to require only display of one adjustment pair, such as the pitch adjustment pair, that construction would conflict with prior art. Thus, the court adopts the construction that the mobile application simultaneously displays the height and direction adjustments for each adjustment pair, meaning more than one pair of adjustment height and direction.

Next, the court must apply the construction to the allegedly infringing product to determine whether it is infringing. See Markman, 52 F.3d at 976. A party establishes infringement in one of two ways: literal infringement of the claim language or infringement under the doctrine of equivalents. See Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 35 (1997).

Literal infringement occurs where the allegedly infringing device includes "each and every limitation of the asserted claim(s)." Trebro Mfg., Inc. v. Firefly Equip., LLC, 748 F.3d 1159, 1166 (Fed. Cir. 2014). Infringement under the doctrine of equivalents occurs where the allegedly infringing device "performs substantially the same function in substantially the same way to obtain

---

[1] An expanded construction of the "adjustment pair" referring to the height and direction indicators for each tire or corner of the recreational vehicle, in order to properly adust the pitch and roll of the recreational vehicle, is also permissible. See [D.E. 1-1] 17–18. Although this construction may differ slightly from ETN's, this expanded construction still gives meaning to the phrase "each adjustment pair." Cf. Superguide Corp. v. DirecTV Enters., Inc., 358 F.3d 870, 875 (Fed. Cir. 2004) (stating that a particular embodiment used in the specification to aid understanding should not import limitations into the claim).

6

the same result" as the patented product. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950), superceded on other grounds by statute, 35 U.S.C. § 112. The essential objective inquiry under the doctrine of equivalents is: "[d]oes the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" Warner–Jenkinson, 520 U.S. at 40. In determining equivalency,

> [a]n analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.

Id.

FBA has failed to show it is likely that ETN's BLS is infringing the 925 Patent. See Trebro Mfg., 748 F.3d at 1166. FBA presents no evidence that ETN's BLS simultaneously displays more than one adjustment pair. Moreover, FBA's doctrine of equivalents arguments do not save its infringement claim. FBA invokes the equivalency arguments to show that ETN's BLS displays the adjustment direction by virtue of the visual meter present in the display. See [D.E. 9-1] 4, 6, 9. FBA, however, failed to show that ETN's BLS displays more than one adjustment pair simultaneously.

"[P]rosecution history estoppel can prevent a patentee from relying on the doctrine of equivalents when the patentee relinquishes subject matter during the prosecution of the patent, either by amendment or argument." Eagle Comtronics, Inc. v. Arrow Commc'n Lab'ys, Inc., 305 F.3d 1303, 1315 (Fed. Cir. 2002); see Eli Lilly & Co. v. Hospira, Inc., 933 F.3d 1320, 1330 (Fed. Cir. 2019). "Such a narrowing amendment is presumed to be a surrender of all equivalents within the territory between the original claim and the amended claim . . . ." Eli Lilly & Co., 933 F.3d at 1330 (quotation omitted). A party can rebut this presumption by showing "that the rationale of its amendment '[bore] no more than a tangential relation to the equivalent in question.'" Id. "[A]n

7

amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1369 (Fed. Cir. 2003) (en banc).

ETN persuasively argues that FBA narrowed its claims by introducing the "simultaneously" language to clarify that the claims covered "simultaneously displaying multiple adjustment indicators." [D.E. 15] 22–24. This language dooms FBA's reliance on the doctrine of equivalents. See id. at 24–26.

At this preliminary stage, FBA has not shown a likelihood of success on the merits. Thus, the court need not analyze the remaining three factors under Winter and denies FBA's motion for a TRO.

III.

In sum, the court DENIES plaintiff's motion for a temporary restraining order [D.E. 8].

SO ORDERED. This 10 day of October, 2023.

J. Dever
JAMES C. DEVER III
United States District Judge