IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-505-D

| | |
|---|---|
| FBA OPERATING CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ETN CAPITAL, LLC, d/b/a ) | |
| BEECH LANE, LLC, ) | |
| Defendant. ) | |

On September 13, 2023, FBA Operating Company ("FBA" or "plaintiff") filed a complaint against ETN Capital, LLC, d/b/a Beech Lance ("ETN" or "defendant") alleging patent infringement [D.E. 1]. On September 27, 2023, FBA moved for a temporary restraining order ("TRO") [D.E. 8] and filed a memorandum, exhibits, and a declaration in support [D.E. 9, 9-1, 9-2, 10]. On September 30, 2023, ETN responded in opposition [D.E. 15] and filed two affidavits and numerous exhibits [D.E. 16, 17]. On October 2, 2023, ETN moved to dismiss the complaint for failure to state a claim [D.E. 18]. See Fed. R. Civ. P. 12(b)(6). On October 10, 2023, the court denied FBA's motion for a TRO [D.E. 23].

On November 6, 2023, FBA filed an amended complaint [D.E. 27]. On December 8, 2023, ETN moved to dismiss the amended complaint for failure to state a claim, moved for permission to manually file an exhibit, and moved for sanctions against FBA [D.E. 34, 35, 37]. See Fed. R. Civ. P. 12(b)(6) and 11(b). ETN filed memoranda and exhibits in support [D.E. 36, 38]. On January 29, 2024, FBA responded in opposition to ETN's motions [D.E. 41, 42, 43]. On February 12, 2024, ETN replied [D.E. 44, 45, 46]. On March 1, 2024, the court granted ETN's motion to manually file an exhibit but did not resolve whether it would consider the contents in deciding the

remaining motions [D.E. 48].[1] As explained below, the court grants ETN's motion to dismiss FBA's amended complaint, dismisses as moot ETN's first motion to dismiss, allows FBA one final attempt at an amended complaint, and denies both parties' requests for sanctions and fees.

I.

On January 12, 2021, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 10,890,925 B2 ("925 Patent") to FBA. See Am. Compl. [D.E. 27] ¶¶ 15, 17. The 925 Patent concerns a recreational vehicle leveling system. See id. at ¶ 15. By calculating and transmitting adjustment information, the system allows the end user to adjust the recreational vehicle's pitch and roll to balance the vehicle. See id. The 925 Patent contains 20 claims, three of which are independent, including Claim 1. See id. at ¶ 20.

ETN's Beech Lane brand sells the Beech Lane Wireless RV Leveling System ("BLS"). See id. at ¶¶ 2, 28. FBA alleges that the BLS competes with and practices at least one claim of the 925 Patent. See id. at ¶ 28. FBA also alleges that ETN did not obtain a license to practice the 925 Patent, and the continued development, testing, manufacture, promotion, and sale of the BLS infringes on the 925 Patent. See id. at ¶¶ 29–30. FBA alleges that ETN directly and indirectly infringes at least one claim of the 925 Patent. See id. at ¶¶ 40–53.

In part, the 925 Patent Claim 1(e) states:

> wherein the display device of the smart device is configured to display at least one image representative of the vehicle and showing the respective sections of the vehicle and to simultaneously display the height adjustment amount and corresponding adjustment direction of each adjustment pair adjacent to each respective section of the vehicle shown in the at least one image.

---

[1] The court received the physical exhibit of the allegedly infringing product. In reviewing the motions, however, the court determines that the pleadings contain sufficient evidence of the allegedly infringing product for the court to resolve these motions without considering the contents of the physical exhibit.

2

[D.E. 27-2] 4–5. Independent Claims 10 and 15 contain almost identical language. See [D.E. 36] 3–4. FBA alleges that the BLS includes a "smart device displaying the gathered adjustment heights and directions (each an 'adjustment pair' Claim 1, 10, and 15) on a display screen. . . . The device may show more than one adjustment pair on the display or may, bifurcate the display of each adjustment pair into different views on the smart device." Am. Compl. ¶ 34. FBA details its allegations of infringement in a claim chart. See [D.E. 27-2]. Specifically, FBA alleges that the BLS's mobile phone application is configured to display "at least one image representative of the vehicle, and simultaneously indicating to the user one or more adjustment amounts and adjustment directions so the user may make the adjustments to bring the vehicle to level." [D.E. 27-2] 4–5. FBA provides a side-by-side display of two "screenshots" of the BLS display; one showing the "simultaneous[] display [of] the height adjustment amount . . . and the adjustment direction . . . relating to the 'Roll' of the vehicle," and the next showing the "simultaneous[] display [of] the height adjustment amount . . . and the adjustment direction . . . relating to the 'Pitch' of the vehicle." Id. at 5.

Alternatively, FBA alleges that even if "simultaneous display" requires <u>all</u> adjustment pairs' height and direction adjustments to be displayed simultaneously, the BLS directly infringes under the doctrine of equivalents. See id. FBA alleges that the BLS single-screen display has "toggle" buttons at the bottom of the screen to alternate between viewing the pitch and the roll adjustment information, and that this "split-screen" functionality satisfies the "simultaneous display" element of Claim 1e. See id. FBA analogizes this "split-screen" functionality to "how an open book has two sides, both of which can display text simultaneously when the book is open." Id.

3

On October 10, 2023, the court denied FBA's motion for a TRO. See [D.E. 23]. In that order, the court performed an initial claim construction to determine the meaning of the claims and assess whether FBA had shown that it was likely to succeed on the merits. See id. at 2–3. Based on ordinary meaning and grammar usage, the specification of the 925 Patent, and the limited prosecution history before the court, the court determined that Claim 1e requires that "the mobile application simultaneously displays the height and direction adjustments for each adjustment pair, meaning more than one pair of adjustment height and direction." Id. at 6. The court held that FBA failed to demonstrate how the BLS simultaneously displayed more than one adjustment pair. See id. at 7.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must

"nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

ETN moves to dismiss FBA's amended complaint for failure to state a claim for which relief can be granted. See [D.E. 35]; Fed. R. Civ. P. 12(b)(6). ETN argues, as it did in opposing FBA's TRO motion, that all claims of the 925 Patent require simultaneous display of two or more adjustment pairs, and because the BLS only displays one adjustment pair at a time, FBA has not plausibly alleged infringement of the 925 Patent. See [D.E. 36] 10–20. FBA responds that ETN's motion to dismiss relies on impermissible claim construction and argues that the Federal Circuit has cautioned against engaging in claim construction of disputed terms in resolving a motion to

5

dismiss under Rule 12(b)(6). See [D.E. 41] 7–9. ETN replies that claim construction is not categorically prohibited under Rule 12(b)(6), and that this case requires no in-depth claim construction because the claim at issue is unambiguous. See [D.E. 44] 2–4.

A.

The Federal Circuit has clarified how the Twombly and Iqbal plausibility standard interacts with the traditional rule that courts do not engage in claim construction at the Rule 12(b)(6) stage for patent infringement claims. See Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352–53 (Fed. Cir. 2021); Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018). In Bot M8, the Federal Circuit held that "a plaintiff need not prove its case at the pleading stage" and that a plaintiff is "not required to plead infringement on an element-by-element basis." Bot M8, 4 F.4th at 1352 (cleaned up); see Nalco, 883 F.3d at 1350. The Federal Circuit also noted, however, that a plaintiff cannot assert a plausible claim for infringement under Twombly and Iqbal by "reciting the claim elements and merely concluding that the accused product has those elements." Bot M8, 4 F.4th at 1353. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Id. The level of detail required to plausibly allege infringement will vary depending on "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." Id.

In Nalco, the Federal Circuit rejected defendants' opposition to plaintiff's theory of infringement because "[d]efendants' arguments boil down to objections to Nalco's proposed claim construction" of a disputed claim term. Nalco, 883 F.3d at 1349. FBA argues that it plausibly alleges infringement because the court must reject ETN's claim construction arguments at this

6

stage. See [D.E. 41] 8–9. FBA also argues that Nalco prohibits any claim construction or interpretation at the Rule 12(b)(6) stage. See id.

Nalco does not prohibit claim construction when considering a Rule 12(b)(6) motion to dismiss. Just three years after deciding Nalco, the Federal Circuit in Bot M8 affirmed the dismissal of two patent infringement claims for failure to state a claim upon which relief can be granted. See Bot M8, 4 F.4th at 1354–55. For the first claim, the court construed the unambiguous terms to "require[] that the game program and authentication program be stored together, separately from the motherboard," and held that the factual allegations in complaint failed to allege infringement of that claim. Id. at 1354. For another claim, the court interpreted a "mutual authentication" requirement to require storing "gaming information including a mutual authentication program" on the same memory. Id. The Bot M8 court affirmed the district court's holding that the complaint failed to allege when or where the game program and mutual authentication program were stored together. See id. at 1354–55. Thus, for each claim, the court "interpreted" the unambiguous claim elements and held that the factual allegations in the complaint did not plausibly allege those elements. See id.

Bot M8 comports with Federal Circuit precedent. In Atlas IP, LLC v. Exelon Corp., 189 F. Supp. 3d 768 (N.D. Ill. 2016), aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co., 686 F. App'x 921 (Fed. Cir. 2017) (unpublished), the Federal Circuit affirmed a district court's decision to dismiss a complaint under Rule 12(b)(6) because the plaintiff's theory of claim construction was "wrong as a matter of law." Id. at 778. In Atlas IP, the district court engaged in limited claim construction regarding the scope of Claim 1. The district court determined that the plaintiff's claim for relief rested on several untenable claim constructions, the first of which was that "Claim 1 reach a MAC protocol incapable of controlling two or more remotes"; meaning the

7

plaintiff's construction would cover a MAC protocol that could only control one remote. Id. at 776. The district court, however, interpreted Claim 1 to describe a MAC protocol that controlled access to a "plurality of 'remotes'" and as "providing the necessary cycle establishing information to 'each remote.'" Id. at 776–77 (cleaned up). Thus, the district court construed the claim language and specification to require the MAC protocol to cover "more than a single remote." Id. at 777. The district court also noted that the patent distinguished the patented MAC protocol from previous MAC techniques with its ability to handle multiple remotes, where prior art had a hub that assigned transmission opportunities to competing remotes. See id.

If the court finds a claim unambiguous and does not require in-depth claim construction to identify its meaning, then the court may conclude under Rule 12(b)(6) that a plaintiff has not plausibly alleged that an accused product meets those unambiguous claim limitations. See, e.g., Bot M8, 4 F.4th at 1354–55; Heidary v. Amazon.com, Inc., ___ F. Supp. 3d ___, 2023 WL 8653184, at *5–6 (D. Md. Dec. 14, 2023), appeal filed, No. 24-1580 (Fed. Cir. Mar. 18, 2024); Atlas IP, 189 F. Supp. 3d at 776–78; cf. Ask Sydney, LLC v. Amazon.com Servs., LLC, ___ F. Supp. 3d ___, 2023 WL 5216815, at *7, 10–13 (W.D. Tex. Aug. 14, 2023); Sapphire Crossing LLC v. Robinhood Mkts., Inc., Civ. No. 18-1717, 2021 WL 149023, at *5 (D. Del. Jan. 15, 2021) (unpublished) (collecting cases), report and recommendation adopted, 2021 WL 355154 (D. Del. Feb. 2, 2021) (unpublished). If, however, the claim has another plausible construction, then the court should deny the motion to dismiss under Rule 12(b)(6). See, e.g., Lite-Netics, LLC v. Nu Tsai Capital LLC, 678 F. Supp. 3d 1115, 1127–29 (D. Neb. June 26, 2023); Terracino v. Trimaco, Inc., No. 5:22-CV-15, 2023 WL 2656753, at *8 (E.D.N.C. Mar. 27, 2023) (unpublished).

8

## B.

A party establishes direct infringement in one of two ways: literal infringement of the claim language or infringement under the doctrine of equivalents. See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 35 (1997). Literal patent infringement under 35 U.S.C. § 271(a) occurs when an alleged patent infringer performs each and every step or element of a claimed method or product. See 35 U.S.C. § 271(a); Warner-Jenkinson, 520 U.S. at 29; Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (per curiam) (en banc); Trebro Mfg., Inc. v. Firefly Equip., LLC, 748 F.3d 1159, 1166 (Fed. Cir. 2014). Infringement under the doctrine of equivalents occurs where the allegedly infringing device "performs substantially the same function in substantially the same way to obtain the same result" as the patented product. Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950) (quotation omitted), superseded on other grounds by statute, 35 U.S.C. § 112. The essential objective inquiry under the doctrine of equivalents is: "[d]oes the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" Warner-Jenkinson, 520 U.S. at 40. In determining equivalency,

> [a]n analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.

Id.

The court begins with the plain text of the claims. In part, the 925 Patent Claim 1e requires the "simultaneous[] display [of] the height adjustment amount and corresponding adjustment direction of each adjustment pair adjacent to each respective section of the vehicle shown in the at least one image." [D.E. 27-2] 4–5. FBA's motion for a TRO required this court to engage in an initial claim construction to evaluate whether FBA was likely to succeed on the merits of its patent

9

infringement claims. Based on the ordinary meaning of these terms, grammar usage, and the specification, the court concluded that "adjustment pairs" means "(1) the amount and direction of the pitch adjustment, and (2) the amount and direction of the roll adjustment." [D.E. 23] 6. The court determined that the plain meaning of the claim required the simultaneous display of more than one pair of adjustment height and direction. See id.

FBA argues that it plausibly alleged infringement and cites the Federal Circuit's observation that "a plaintiff need not prove its case at the pleading stage" and that "it is enough that a complaint place the alleged infringer on notice of what activity is being accused of infringement." [D.E. 41] 14 (quotations omitted); see Bot M8, 4 F.4th at 1352. FBA also argues that ETN's motion to dismiss hinges entirely on the construction of the phrases "simultaneously displaying" and "adjustment pairs" to require the display of more than one adjustment pair at the same time. See [D.E. 41] 8. FBA argues that because the court cannot engage in claim construction in considering a Rule 12(b)(6) motion to dismiss, the court must deny this construction and "instead focus on whether FBA has placed the potential infringer on notice of what activity is being accused of infringement." Id. at 9 (quotation omitted).

The court rejects FBA's arguments. At bottom, FBA asks this court to ignore evaluating whether its infringement claim plausibly meets the court's determination of the plain meaning of Claim 1e. FBA, however, cannot assert a plausible claim for infringement under Twombly and Iqbal by "reciting the claim elements and merely concluding that the accused product has those elements." Bot M8, 4 F.4th at 1353. The Federal Circuit's standard for the level of claim construction permissible under Rule 12(b)(6) does not require the court to ignore its determination of the plain meaning of the claim limitations. See id.

10

Case 5:23-cv-00505-D-RN   Document 51   Filed 06/10/24   Page 10 of 17

The court can engage in "rolling claim construction" as the court's understanding evolves. Jack Guttman, Inc. v. Kopykake Enters., 302 F.3d 1352, 1361 (Fed. Cir. 2002); see Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1363 (Fed. Cir. 2001); Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996). But where "the words are used in their commonly understood manner and Plaintiff has not offered any argument about what it believes are the proper interpretations of the disputed terms," the court can hold under Rule 12(b)(6) that plaintiff fails to plausibly allege direct infringement of the patent's claims. Digital Landscape Inc. v. Maui Jim USA, Inc, No. 21-1174, 2022 WL 507653, at *5 (C.D. Ill. Feb. 18, 2022) (unpublished).

As in Digital Landscape, the court surmises that FBA has a different understanding of what Claim 1e means, but FBA's amended complaint does not allege that understanding. Moreover, FBA argues that FBA "has advanced objectively reasonable preliminary [or potential] claim constructions." [D.E. 43] 26 (cleaned up). Yet, FBA mostly emphasizes the preliminary nature of the court's TRO order and the existence of the court's formal claim construction process. See id. at 26–27. FBA only asserts that "the non-binding preliminary constructions presented by FBA in its Amended Complaint place ETN on notice of FBA's claim." Id. at 27.

FBA's only specific articulation of an alternative construction appears later in its memorandum in opposition to ETN's motion for sanctions. Specifically, FBA argues that "simultaneously" as used in Claim 1e need not mean "at the same time." Id. at 27–30.

The court rejects FBA's construction of "simultaneously." See, e.g., Atlas IP, LLC, 189 F. Supp. 3d at 778. "Simultaneously" is not an ambiguous word. "Simultaneously" means "existing or occurring at the same time." Merriam-Webster's New Collegiate Dictionary 1099 (9th ed. 1991). The court rejects FBA's argument that in order to mean "at the same time," the

11

claim would have used one of the other temporal phrases used elsewhere in the 925 Patent: "real time"; "near real time"; "substantially in real time"; and "essentially in real time." [D.E. 43] 29–30. The presence of other temporal phrases in the patent, which are not in the specific claim element at issue, does not obviate the plain meaning of the word "simultaneously." In fact, the plain reading of the claims and specification indicate that those other temporal phrases refer to the speed of data transmission from the smart device to the display screen, not the temporal relation of different sets of data that the display could show. See, e.g., [D.E. 27-2] 5 (Claim 1f). Those separate elements do not change the meaning of the word "simultaneously" as applied to the information the screen displays. See, e.g., Paragon Sols., LLC v. Timex Corp., No. 1:06-CV-677, 2008 WL 11452583, at *7–8 (S.D. Ohio Apr. 22, 2008) (unpublished), rev'd on other grounds by 566 F.3d 1075 (Fed. Cir. 2009).

In resolving FBA's motion for a TRO, the court reached an initial construction of the plain meaning of Claim 1e. Without a plausible argument from FBA about its desired construction of Claim 1e in its amended complaint, the court examines the allegations of infringement against its initial understanding of the plain meaning of Claim 1e.

FBA relies on its claim chart exhibit to put ETN on notice of its claim. In support of FBA's claim for literal infringement, the claim chart only alleges "the Beech Lane mobile phone application is configured to display at least one image representative of the vehicle, and simultaneously indicating to the user one or more adjustment amounts and adjustment directions." [D.E. 27-2] 4–5. FBA displays two screenshots of the BLS displays, each showing one adjustment pair. See id. These are conclusory allegations of some but not all claim elements, and FBA does not articulate how this theoretical construction accounts for the "each adjustment pair" element in Claim 1e. FBA cannot assert a plausible claim for infringement under Twombly and Iqbal by

12

"reciting the claim elements and merely concluding that the accused product has those elements." Bot M8, 4 F.4th at 1353. Moreover, the photos of the allegedly infringing product that FBA submits demonstrate that it only displays one adjustment pair at a time. See [D.E. 27-2] 2–5.

In opposition to this conclusion, FBA argues that it plausibly alleged infringement because the claim concerns simple technology, a lay person can understand the product, and the complaint contains sufficient detail of the allegedly infringing product. See [D.E. 41] 15; Bot M8, 4 F.4th at 1353. The court agrees with FBA concerning the simplicity of this technology and the level of detail required for the court to assess the claim. These factors, however, weigh in ETN's favor. The straightforward nature of the product, the simplicity of the elements in Claim 1e, and the uncontested factual details of the allegedly infringing product, as demonstrated by FBA's exhibits, allow the court to determine that the plain meaning of Claim 1e requires "the mobile application [to] simultaneously display[] the height and direction adjustments for each adjustment pair, meaning more than one pair of adjustment height and direction." [D.E. 23] 6. Here, FBA fails to plausibly allege literal infringement of the 925 Patent under the court's plain reading of Claim 1e, which requires simultaneous display of more than one adjustment pair.

As for FBA's allegation of infringement under the doctrine of equivalents, FBA alleges a theory of infringement consistent with the court's plain reading of Claim 1e, but the allegation is implausible in light of the undisputed facts of the infringing product. FBA alleges that the BLS single screen display has "toggle" buttons at the bottom of the screen to alternate between viewing the pitch and the roll adjustment information, and that this "split-screen" functionality satisfies the "simultaneous display" element of Claim 1e. See [D.E. 27-2] 5. FBA analogizes this "split-screen" functionality to "how an open book has two sides, both of which can display text simultaneously when the book is open." Id. Thus, FBA argues that the BLS "allows a user to

13

clearly see on a single screen an option to view <u>both</u> the 'Roll' and 'Pitch' . . . with the black buttons at the bottom," of the display screen, which is equivalent to simultaneously displaying all adjustment pairs. [D.E. 41] 13 (emphasis added).

The court rejects FBA's implausible allegation. The toggle function of the BLS display screen does not match the "function, way, and result of the claimed element." <u>Warner-Jenkinson</u>, 520 U.S. at 40. It does not allow a user to see at the same time <u>both</u> the pitch and roll adjustment pairs. It allows a user to see on a single screen <u>either</u> the pitch or roll adjustment pair. The commonsense function and result of a "simultaneous display" in this context avoids the need to switch between two potential displays. A toggle function between two separate screens is not a plausible equivalent to "simultaneous display." Unlike an open book, where the reader can see two pages at the same time, a toggle function allows a reader to see one page at a time. FBA's theory of infringement under the doctrine of equivalents would "entirely vitiate a particular claim element." <u>Warner-Jenkinson</u>, 520 U.S. at 39 n.8.

FBA fails to plausibly allege either direct literal infringement or direct infringement under the doctrine of equivalents. Absent a viable claim for direct infringement, a claim for indirect infringement fails. <u>See</u> <u>Limelight Networks, Inc. v. Akamai Techs., Inc.</u>, 572 U.S. 915, 920–21 (2014). Accordingly, the court grants ETN's motion to dismiss.

FBA requests leave to amend. <u>See</u> [D.E. 41] 18–19. In <u>Digital Landscape</u>, where the plaintiff similarly failed to plausibly allege a construction that would enable a plausible claim for infringement, the court found amendment futile for the literal infringement claim, but permitted the plaintiff another attempt to allege a doctrine of equivalents claim. <u>See</u> <u>Digital Landscape</u>, 2022 WL 507653, at *6. The court does not know whether FBA failed to articulate a plausible alternative construction because it has none or because it erroneously believed that the Federal

14

Circuit standard protected it from Twombly and Iqbal. The court declines to theorize plausible alternatives to its plain reading of Claim 1e. Nonetheless, the court will permit FBA one final attempt at an amended complaint. If FBA chooses to file a second amended complaint, the court will then assess whether FBA presents a plausible alternative construction that warrants proceeding to the formal claim construction procedures. Accordingly, the court grants the motion to dismiss without prejudice and allows FBA to file one final amended complaint.

C.

ETN moves for Rule 11 sanctions against FBA. See [D.E. 37]; Fed. R. Civ. P. 11. FBA responds in opposition and seeks Rule 11 sanctions and fees from ETN for filing a frivolous Rule 11 motion. See [D.E. 43] 35.

Rule 11 requires an attorney to make a reasonable inquiry to determine that a complaint is well-grounded in both fact and law and is not filed for an improper purpose. See Fed. R. Civ. P. 11(b). In determining whether a complaint is well-grounded in fact, "[a]n objective test is used to determine the reasonableness of a lawyer's prefiling investigation." In re Kunstler, 914 F.2d 505, 514 (4th Cir. 1990) (quotation omitted). A complaint's factual allegations fail to satisfy Rule 11(b)(3) when the attorney has not obtained any corroborating information before filing. See Morris v. Wachovia Sec., Inc., 448 F.3d 268, 277 (4th Cir. 2006). A legal argument violates Rule 11(b)(2) when it has "absolutely no chance of success under the existing precedent." Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002) (quotation omitted); see Morris, 448 F.3d at 277. A legal argument, however, must be more than unsuccessful to warrant sanctions. See Hunter, 281 F.3d at 153–54. Attorneys must be allowed to seek good faith expansions and changes of the law. See Fed. R. Civ. P. 11(b)(2); Blue v. U.S. Dep't of Army, 914 F.2d 525, 534–36 (4th Cir. 1990). Sanctions are warranted only when "a reasonable attorney in like circumstances

15

could not have believed his actions to be legally justified." Hunter, 281 F.3d at 153 (quotation omitted). A complaint violates Rule 11(b)(1) when an attorney files it without the central and sincere purpose of vindicating rights in court. See Kunstler, 914 F.2d at 518. Improper purposes include filing suit as leverage in separate proceedings, to obtain discovery for use in other proceedings, and to embarrass, intimidate, or harass. See id. at 519–20.

ETN seeks sanctions under two theories. ETN argues that FBA violated Rule 11 by (1) "failing to conduct an adequate pre-filing investigation prior to filing the original complaint, the motion for TRO," and the amended complaint, and (2) "making deliberate and knowing misrepresentations regarding the accused device in the amended complaint." [D.E. 38] 14, 19, 24 (cleaned up).

A legal argument must be more than unsuccessful to warrant sanctions. See Hunter, 281 F.3d at 153–54. FBA has attempted to protect its patent rights through litigating against what FBA in good faith believes are infringing products. See [D.E. 43] 15–16 (discussing two cases in the Western District of North Carolina). This court has reviewed those dockets. Although those cases involved graphic displays of products that appear to display more than one adjustment pair at a time, FBA did not violate Rule 11 by filing this suit against ETN and attempting to argue that ETN's product also infringed the 925 Patent, either literally or through the doctrine of equivalents. Thus, the court rejects ETN's first theory for sanctions.

ETN also argues that FBA materially misrepresented the functionality of the ETN product in its amended complaint when it referred to the split-screen functionality of the toggle function and analogized it to an open book display. See [D.E. 38] 14–18, 24–25. ETN argues that FBA included in its claim chart a "deceptive and misleading image" when it "fabricated an image" of

16

two screenshots of the ETN product pushed together as if the product displayed two images at once. Id. at 15, 16.

The court finds that FBA's open book analogy fails and that FBA stretched the logic of its argument and exhibits to draw that analogy. The court, however, rejects ETN's argument that FBA's poor analogy and sloppy representation of an allegedly infringing product warrants sanctions. Thus, the court rejects ETN's second theory for sanctions.

Finally, the court rejects FBA's argument that ETN frivolously moved for sanctions. In making its doctrine of equivalents argument, FBA made allegations concerning the functionality of ETN's product that ETN in good faith believed to be gross misrepresentations of the visual displays of its products. ETN did not frivolously argue that the court should sanction FBA for presenting arguably misrepresentative displays of an allegedly infringing product, even if the court now rejects that argument.

### III.

In sum, the court GRANTS defendant's motion to dismiss plaintiff's amended complaint [D.E. 35], DISMISSES as moot defendant's first motion to dismiss [D.E. 18], DENIES defendant's motion for sanctions [D.E. 37], DENIES plaintiff's request for fees [D.E. 43], DISMISSES WITHOUT PREJUDICE plaintiff's first amended complaint, and GRANTS plaintiff's request for leave to amend [D.E. 41]. Plaintiff may file one final amended complaint not later than July 1, 2024.

SO ORDERED. This _10_ day of June, 2024.

*A. Dever*
JAMES C. DEVER III
United States District Judge